UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PARWIZ SARWARI,

                    Petitioner,

        v.

CAMMILLA WAMSLEY, Seattle Field
Office Director, Enforcement and Removal
Operations, United States Immigration and
Customs Enforcement (ICE), et al.,

                    Respondents.

CASE NO. 2:26-cv-00121-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Parwiz Sarwari's Petition for Writ of Habeas Corpus ("habeas petition"). Dkt. No. 1. Respondents are Cammilla Wamsley, Seattle Field Office Director, Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement ("ICE"); Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"); Kristi Noem, Secretary, United States Department of Homeland Security ("DHS"); Pamela Bondi, United States Attorney General; and DHS. Having considered the habeas petition,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 1

Respondents' return (Dkt. No. 4),[1] Petitioner's traverse (Dkt. No. 6), and the relevant record, the Court GRANTS the petition and ORDERS Petitioner's release.

## I.    BACKGROUND

Petitioner, a native of Afghanistan, fled his home country in fear of retribution by the Taliban after a high-profile career in law enforcement, with a focus on counter-narcotics. Dkt. No. 1 ¶ 1; Dkt. No. 1-2 (Arash Sarwary Decl.) ¶¶ 7–10. Petitioner's brother, Arash Sarwary, is a United States citizen who previously served alongside the United States Marine Corps and other branches of the U.S. military for nearly two decades, and their late father was a two-star general who worked closely with the U.S. Army Special Forces. Dkt. No. 1-2 at ¶¶ 2, 11. According to Arash Sarwary, the family is publicly known in Afghanistan for its loyalty and service to the United States, placing Petitioner and his family at risk of torture and extrajudicial killing if returned to Afghanistan. Id. ¶¶ 11–12. After the Taliban seized control of Afghanistan, many traffickers Parwiz Sawari had arrested were released from prison, and Taliban members actively searched for him by name and issued an arrest warrant against him and members of his family because of the Sarwari/Sarwary brothers' cooperation with the United States government. Id. ¶ 10. These threats compelled the family to flee Afghanistan. Id.

On January 29, 2023, Petitioner, along with his wife and six children, turned themselves in to the Border Patrol inside the United States near El Paso, Texas, after having entered the country from Mexico without inspection. See Dkt. No. 1 ¶ 3; Dkt. No. 6-2 (Form I-213) at 3–4. Petitioner was initially placed in expedited removal proceedings, but after he expressed a fear of returning to Afghanistan, he was referred to United States Citizenship and Immigration Services ("USCIS") for adjudication of his asylum claim. See Dkt. No. 1 ¶ 22; Dkt. No. 4 at 2. On

---

[1] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

January 30, 2023, Petitioner was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). Dkt. No. 6-3 (Interim Notice Authorizing Parole) at 2. This provision permits the government to temporarily release a noncitizen from custody within the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Petitioner's parole was set to expire after one year. Dkt. No. 6-3 at 2. In June 2023, Petitioner timely submitted an application for asylum. Dkt. No. 1 ¶ 3. At some point, according to Petitioner, he was issued a Notice to Appear ("NTA") for full removal proceedings, but it was not filed with the immigration court.[2] *Id.* On August 16, 2023, Petitioner was issued an Order of Release on Recognizance "[i]n accordance with section 236 of the Immigration and Nationality Act," allowing him to continue to remain undetained while he awaited adjudication of his asylum petition and subjecting him to certain conditions of release, including participation in DHS's Alternatives to Detention ("ATD") program.[3] Dkt. No. 6-4 (Order of Release on Recognizance) at 2–3.

For the next several years, Petitioner and his family rebuilt their lives in their new home in Oregon while they waited for USCIS to process their asylum applications. *See* Dkt. No. 1 ¶ 4, Dkt. No. 1-2 ¶ 15. Petitioner and his wife attended periodic ERO check-ins as part of the requirements of their release under the ATD program. Dkt. No. 1 ¶ 23. Petitioner alleges that he has "fully complied with all hearings, filing deadlines, and other requirements" of ATD (*id.* ¶ 26), although Respondents contest this (Dkt. No. 4 at 1 (alleging "multiple ATD violations")). It is uncontested that Petitioner and his wife have committed no crimes in the United States and are not accused or suspected of posing a danger to their community. Dkt. No. 1 ¶ 25; *see generally* Dkt. No. 4.

---

[2] Although this NTA would be part of Petitioner's A-File, neither Party has presented it to the Court.

[3] Section 236 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1226.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 3

On December 25, 2025, after nearly three years in the United States, Petitioner had expected to spend Christmas Day with his family and take his children to view the Christmas lights in their community. Dkt. No. 1-2 at 14. Those plans were interrupted when ICE officers arrived at their home without warning, arrested Petitioner in front of his family, and transported him across state lines to the NWIPC in Tacoma, Washington. *Id.*; Dkt. No. 1 at 24; Dkt. No. 4 at 3. Petitioner was not provided with advance notice of his detention or the reasons for it. Dkt. No. 1 at 27. Even during the arrest, Petitioner was not given an explanation for his detention. *Id.* at 24.

Petitioner was placed in removal proceedings, and, according to Respondents,[4] a merits hearing on his asylum application has been set for February 10, 2026. Dkt. No. 4 at 3. On January 7, a bond hearing was held, at which, according to Respondents, an immigration judge found Petitioner was subject to mandatory detention under *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). *Id.*

Plaintiff filed the petition now before the Court on January 14, 2026, seeking a writ of habeas corpus under 28 U.S.C. § 2241. He alleges, through counsel, that his arrest and re-detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. No. 1.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 8 U.S.C. § 2241(c).

---

[4] The Court has not been provided with any records pertaining to Petitioner's removal proceedings.

### III.    DISCUSSION

Petitioner argues that his arrest and re-detention without notice and an opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution (Dkt. No. 1 ¶¶ 6, 7, 30), which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). District courts in this Circuit have applied the Mathews test in similar circumstances since then. *See, e.g.*, *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan.

20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025)

Petitioner argues that the *Mathews* test applies to his case and compels a finding that due process required that he be given notice and an opportunity to respond *before* he was deprived of his liberty. Dkt. No. 1 ¶¶ 30–41. Respondents do not dispute that *Mathews* governs (*see* Dkt. No. 4 at 6–9) but argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b), that Respondents prevail in the *Mathews* analysis, and that Petitioner was not entitled to any pre-deprivation process (*see generally id.*). Consistent with persuasive authority and the arguments of the Parties, the Court will evaluate Petitioner's claims under *Mathews*, considering each factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements, after first dispensing with Respondents' argument that they have a lawful basis to detain Petitioner.

## A.    Whether a Lawful Basis for Petitioner's Detention Exists Is Irrelevant to the Claim Before the Court

As a preliminary matter, the Court need not consider whether there is a statutory basis, as Respondents allege, upon which Petitioner might be lawfully detained. "[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025). As Respondents acknowledge, the habeas petition before the Court is not directed at their classification of Petitioner, but "challenges his re-detention in December 2025 as violative of due process." Dkt. No. 4 at 5. As to the merits of this petition, then, Respondents' arguments regarding their authority to detain Petitioner are neither here nor there, and the Court need not consider them. *See, e.g.*, *Chavarria v. Chestnut*, No. C25-1755, 2025 WL 3533606, at *5 n.3 (E.D. Cal. Dec. 9,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 6

2025) (declining to address respondents' arguments pertaining to mandatory detention after determining petitioner had been released under § 1182(d)(5)(A) and was likely to succeed on merits of due process claim). To the extent that Respondents argue that a pre-detention hearing would be futile because Petitioner is allegedly subject to mandatory detention, the Court considers that argument *infra* Section III.C.

**B.      The *Mathews* Factors Weigh in Petitioner's Favor**

       **1.          Petitioner Has a Considerable Private Interest in His Liberty**

As in *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022), one of the cases Respondents rely on, "the government for its part does not seriously dispute that [Petitioner] has a legitimate and reasonably strong private liberty interest under *Mathews*." As the *Rodriguez Diaz* court acknowledges, "a detained person's liberty interest is substantial." *Id.* at 1199. Respondents acknowledge Petitioner's "weighty liberty interest[]" (Dkt. No. 4 at 6 (quoting *Reyes v. King*, No. C19-8674, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)), but counters that noncitizens, and particularly noncitizens in certain types of removal proceedings, have lesser liberty interests than citizens (*id.* at 6–7) and that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process" (*id.* at 6 (quoting *Demore v. Kim*, 538 U.S. at 523)). Neither of these assertions is helpful in the *Mathews* analysis. Petitioner does not contend that his liberty interests is equivalent to a citizen's, nor does he challenge the constitutionality of immigration detention *per se*: instead, he asserts, correctly, that the Constitution protects his liberty interests by requiring due process prior to a deprivation of his liberty. *See generally* Dkt. No. 1.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (a noncitizen has a liberty interest "strong enough" to

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 7

challenge "indefinite and potentially permanent" immigration detention). That the Government exercises discretion in setting conditions of release does not eliminate the protections afforded to Petitioner's liberty interest. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]").

When he was released from initial detention, first on humanitarian parole, then on his own recognizance, Petitioner acquired a liberty interest entitled to the protections of the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Petitioner's actions since that initial release, including applying for asylum, supporting his family, participating in community life, and attending mandatory check-ins, demonstrate his reasonable reliance on these interests and the weightiness of those interests. Petitioner can only engage in these actions—the actions that make up his life—while free.

Therefore, the first *Mathews* factor weighs in Petitioner's favor.

**2.      The Risk of Erroneous Deprivation of Liberty is High**

Petitioner contends the risk of erroneous deprivation of his liberty interests in the absence of a pre-deprivation hearing is high "because a hearing serves to ensure that the purposes of detention—the prevention of danger and flight risk—are properly served." Dkt. No. 1 ¶ 38 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025)).

For their part, Respondents argue that "the risk of a constitutionally significant and erroneous deprivation did not necessitate a pre-deprivation hearing," and that, "if the Court were to order a hearing," a post-deprivation hearing would be sufficient in light of Petitioner's alleged

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 8

ATD violations. Dkt. No. 4 at 8. Respondents rely for this step of the analysis on two cases, *Zinermon v. Burch*, 494 U.S. 113, 127 (1990), and *Martinez Hernandez v. Andrews*, No. C25-1035, 2025 WL 2495767, at *1 (E.D. Cal. Aug. 28, 2025). Unfortunately, Respondents, through counsel, misconstrue the meaning of these authorities and their application to Petitioner's case.

Respondents represent the Supreme Court precedent in *Zinermon v. Burch* as follows:

> The Supreme Court has held that "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in the original). But in the same opinion, the Court also recognized that a pre-deprivation hearing is not appropriate in every situation. *Id.*, at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable). Petitioner's re-detention qualifies as a special case due to his ATD violations.

Dkt. No. 4 at 7. The lack of authority or argument for the assertion that ATD violations would make this a "special case" is the least of the Court's concerns. Contrary to Respondents' representation, *Zinermon* does not suggest there *may be special cases*; rather, it discusses a single, discrete "special case" known as "the *Parratt* rule" and represented by the cases *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984). The *Parratt* rule applies to a unique subset of deprivations where there is no practical way that "predeprivation procedural safeguards *could* address the risk of deprivations" because the nature of the deprivation is such that it cannot be foreseen by the state. *Id.* at 132 (emphasis added). In *Parratt*, the deprivation in question was the negligent loss of a person's property while he was in state custody, and in *Hudson*, the deprivation resulted from unauthorized and tortious conduct by a state employee. *Zinermon*, 494 U.S. at 129–30. Under the unusual circumstances where pre-deprivation process is not practicable "because of the random and unpredictable nature of the

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 9

deprivation" at issue, the *Parratt* rule holds that a tort remedy provides the process that is due. *Id.* at 132.

The *Parratt* rule obviously does not apply here. And, while a portion of the *Zinermon* opinion not cited by Respondents acknowledges a broader subset of "circumstances" under which the Supreme Court has found that "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process," Respondents do not point to any relevant statutory provision or tort remedy (and in any case, none of *Zinermon*'s "circumstances" involved a risk of confinement). *Zinermon*, 494 U.S. at 128 (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436 (1982); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978); *Ingraham v. Wright,* 430 U.S. 651, 682 (1977); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 619–620, (1974)). There is simply nothing in *Zinermon* that could plausibly support Respondents' statement that "Petitioner's re-detention qualifies as a special case due to his ATD violations." Dkt. No. 4 at 7.

Respondents fare no better with *Martinez Hernandez*, 2025 WL 2495767, which, like *Zinermon*, is more harmful than helpful to their case. As presented by Respondents:

> In *Martinez Hernandez v. Andrews*, the district court found that allegations of ATD violations that "are not obviously pretextual as in *E.A.T.-B*" provided at least an arguable basis "that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *Martinez Hernandez*, 2025 WL 2495767, at *11–12. Instead of a pre-deprivation hearing, the district court found that any risk of erroneous deprivation could be reduced through a "prompt, post-deprivation process." *Id.* (collecting cases).

Dkt. No. 4 at 7–9 (footnote omitted) (alteration in original). Respondents' appeal to *Martinez Hernandez* fails for three reasons. First, Respondents' omission of critical context distorts the meaning of the authority they cite. The court in *Martinez Hernandez* was ruling not on a habeas petition, but on a motion for preliminary injunctive relief, as were all the cases it "collect[s]." *See*

*Martinez Hernandez*, 2025 WL 2495767, at \*12 (citing *Carballo v. Andrews*, No. C25-978, 2025 WL 2381464, at \*8 (E.D. Cal. Aug. 15, 2025); *Perera v. Jennings*, No. C21-4136, 2021 WL 2400981, at \*5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. C23-1288, 2023 WL 2744397, at \*6 (N.D. Cal. Mar. 31, 2023)). These courts merely ruled that "prompt, post-deprivation process [wa]s required," —in other words, that affirmative action was required to be taken by Respondents—before the petitions were even adjudicated, 2025 WL 2495767 at \*12; they were *not* making an ultimate determination that this was all the process the petitioners were due. On the contrary, in granting preliminary injunctive relief, every one of these courts necessarily found, as the *Martinez Hernandez* court did, that the petitioner before it was likely to succeed "on the merits of his procedural due process claim." *Id.* Second, *Martinez Hernandez* cannot support an argument that the risk of erroneous deprivation is not high, because it reaches precisely the opposite conclusion. *Id.* at \*11 ("The Court also finds that there is a significant risk of erroneous deprivation under the present circumstances.") Third, the *Martinez Hernandez* court's comment that it was "at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight," *id.* at \*12, was made in the context of distinguishing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316—but the instant case is less like *Martinez Hernandez*, and more like *E.A. T.-B.* The Petitioner in *Martinez Hernandez* had a history of arrests in his country of origin and had been arrested (though not prosecuted) in the United States. 2025 WL 2495767 at \*1–2. *E.A. T-B* does not mention criminal history, *see generally* 795 F. Supp. 3d 1316; Petitioner has none. And where the *Martinez Hernandez* court was presented with "ATD records indicat[ing] numerous violations," 2025 WL 2495767 at \*12, Respondents in this matter have presented no such records. Here, like in *E.A. T.-B.*, the only "evidence" Respondents present that the alleged violations occurred is the sworn statement of a deportation officer, made based on "personal and

professional knowledge, obtained from various records and systems maintained by ICE in the regular course of business." Dkt. No. 5 (Delgado Decl) ¶ 2; *see* Declaration of Christopher Hubbard ¶ 8, *E.A. T.-B. v. Wamsley*, No. C25-1054 (W.D. Wash. July 18, 2025), ECF 19. Officer Javier Delgado's statement that "[b]etween November 19, 2024, and December 16, 2025, Petitioner incurred eight (8) ATD violations, including missed office visits, failed home visits, a missed biometric check in, and a location services disabled issue" provides no specific dates or corresponding facts connected to the individual violations.[5] These are vague, conclusory allegations to which Petitioner cannot respond and that the Court cannot evaluate.[6] As the district court in *Martinez Hernandez* pointed out, issues such as "tracker low battery" or "no location received" (or, here, "location services disabled issue") could reflect technical issues rather than a violation. *Martinez Hernandez*, 2025 WL 2495767, at *11; *see also Ramirez Tesara*, 800 F. Supp. at 1137 ("While Petitioner is alleged to have missed a scheduled phone call, the record shows that he skipped work to be in a position to take the call which he never received.") If Respondents wished Petitioner's alleged ATD violations to be considered, they could and should have provided them to the Court as they did in *Martinez Hernandez*. Without them, there is no basis for the Court to find that "the allegations are not obviously pretextual as in *E.A T.-B*." Dkt. No. 4 at 7 (quoting *Martinez Hernandez*, 2025 WL 2495767, at *12).

Here, where Petitioner has been released upon findings, first, that "urgent humanitarian reasons or significant public benefit" required his release, *see* 8 U.S.C. § 1182(d)(5)(A), and, later, that he did not pose a flight risk or a danger, *see* 8 C.F.R. § 236.1(c)(8), and where it is

---

[5] Respondents do not even provide information by which the Court might evaluate whether the alleged "violations" would actually violate the terms of Petitioner's release. For example, the Order of Release on Recognizance does not clearly require Petitioner to submit to home visits. *See* Dkt. No. 6-4. While it does require him to "comply with the requirements of the ATD program," the Court has no information about those requirements beyond the electronic monitoring and curfew referenced in the Order of Release itself. *Id.* at 2.

[6] This makes the ATD-violation evidence in this case even thinner that what was presented in *E.A. T.-B.*, where the Court lacked records but was at least provided the specific date and type of each alleged violation. *See* Declaration of Christopher Hubbard ¶ 8, *E.A. T.-B. v. Wamsley*, No. C25-1054 (W.D. Wash. July 18, 2025), ECF 19.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 12

undisputed that he was arrested with no notice of the reasons for the arrest, the risk of erroneous deprivation is high. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight . . . the risk of erroneous deprivation remains high."). As other courts in this Circuit have found, a post-deprivation bond hearing under these circumstances "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. at 1324 (citing *Domingo v. Kaiser*, No. C25-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.")).

Therefore, the second *Mathews* factor weighs in Petitioner's favor.

### 3.    Respondents' Interest in Re-Detention Without Hearing Is Minimal

The countervailing governmental interest in Petitioner's re-detention is minimal.

Respondents argue that there is a "heightened government interest in the immigration detention context" and in preventing noncitizens "from remaining in the United States in violation of our law." Dkt. No. 4 at 8 (citation modified). But those interests are not threatened if a pre-deprivation hearing is required. The fact that Respondents have not even alleged that Petitioner poses a flight right or represents a danger to any person undermines any suggestion that Respondents' interests must be satisfied immediately.

Further, Respondents do not (and could not) argue that the cost of procedural safeguards would be insurmountable. As Petitioner notes, "[i]mmigration custody hearings are routine, administratively modest, and already embedded in the system." Dkt. No. 7 at 5. While providing Petitioner with a hearing before re-detaining him would naturally have required some expense of money and time, those costs are outweighed by the risk of erroneous deprivation of the liberty

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 13

interest at stake. *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

In sum, this Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his re-detention without a pre-detention hearing violated his rights under the Fifth Amendment to the United States Constitution.

**C.      The Record Indicates Petitioner Is Not Subject to Mandatory Detention**

Finally, Respondents appear to argue that the *Matthews* analysis is irrelevant, because Petitioner, they claim, is subject to mandatory detention. Dkt. No. 4 at 9. Relying on a recent decision from another court in this District, they assert that, where detention is mandatory, a pre-detention hearing is not required:

> Here, Petitioner is subject to mandatory detention as an arriving alien. Where detention is mandatory, a pre-detention hearing would serve no purpose because release is not legally available. *Calderon v. Noem*, No. 2:25-cv-2136, 2025 WL 3754042, at *8 (W.D. Wash. Dec. 29, 2025) ("The cases cited by Mr. Calderon are inapposite because none of them involved mandatory detention (under the LRA or otherwise).") "Accordingly, a pre-detention hearing could only have one outcome: detention." *Id.*

Dkt. No. 4 at 9. Respondents' reliance on *Calderon* is misplaced. *See* 2025 WL 3754042 at *8. This is because, while the *Calderon* court did hold that a petitioner who was subject to mandatory detention was not entitled to a pre-detention hearing, it made clear, in the very passage Respondents quote, that someone like Petitioner *is not subject to mandatory detention*. Petitioner is not similarly situated to Mr. Calderon, whose pending criminal charge at the time of arrest subjected him to mandatory detention under § 1226(c)(1)(E). He is, however, is similarly situated to most of the petitioners whose cases *Calderon* explicitly distinguished "because none of them involved mandatory detention." *Calderon*, 2025 WL 3754042, at *8

(citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323 (W.D. Wash. 2025); *Ramirez Tesara*, 800 F. Supp. at 1135; *Kumar v. Wamsley*, No. C25-1772, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *Domingo v. Kaiser*, No. C25-5893, 2025 WL 1940179, at *1–2 (N.D. Cal., July 14, 2025); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1026 (N.D. Cal 2025)).[7] Petitioner specifically points to three of *these very cases* in his petition as instances where "the government asserted that mandatory detention initially applied," but the court found that "a person's re-detention could not occur absent a hearing." Dkt. No. 1 ¶ 37. Respondents' citation to *Calderon* cannot possibly support an argument that "Petitioner is subject to mandatory detention [and therefore] a pre-detention hearing would serve no purpose" (Dkt. No. 4 at 9) because its logic is premised on precisely the opposite conclusion.

Putting aside this troubling misrepresentation of authority, Respondents' unsupported position that Petitioner is "is subject to mandatory detention as an arriving alien" contradicts the record before the Court. "Arriving alien" is a term defined by regulation as any noncitizen "coming or attempting to come into the United States at a port-of-entry, . . . seeking transit through the United States at a port-of-entry, or . . . interdicted in international or United States waters and brought into the United States . . . ." in 8 C.F.R. § 1.2. None of these describe

---

[7] The petitioners in *E.A. T-B*, *Ramirez Tesara*, and *Kumar* are the most similarly siguated to Petitioner here. In each case, the noncitizen petitioner was apprehended by Border Patrol inside the United States after entering without inspection, was released on parole and/or released on their own recognizance subject to the terms of ATD, and timely filed an asylum application that was still pending when they were redetained without a predetention hearing. Like the Petitioner here, Mr. T-B was accused of multiple ATD violations. 795 F. Supp. 3d at 1320. Mr. Ramirez Tesara was "alleged to have missed a scheduled phone call, [but] the record show[ed] that he skipped work to be in a position to take the call which he never received." 800 F. Supp. 3d at 1137. Mr. Kumar was not accused of violating ATD, but an Immigration Judge still denied him bond under the theory that he "was subject to mandatory detention"—the same thing that allegedly happened at Petitioner's bond hearing. 2025 WL 2677089 at *2 (citation to record omitted); *see* Dkt. No. 4 at 3. The cited *Guillermo* order specifically rejected the government's petition that mandatory detention applied; the Court in *Ramirez Tesara* later did the same. *See Guillermo*, 791 F. Supp. 3d at 1030 (detention not mandatory under 8 U.S.C. § 1231(a)(6)); *Tesara v. Wamsley*, 2025 WL 3288295, at *4 (W.D. Wash. Nov. 25, 2025) ("[A]lthough the Government asserts that Petitioner falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) . . . , his status as a person who has been living and working in this country for nearly two years counsels against this expanded view of the INA as amended.").

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 15

Petitioner. The Court acknowledges that the line between "arriving" and "being present" is not always black and white. For example, in *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020), the Supreme Court held that a noncitizen "who is detained shortly after unlawful entry"— specifically, in that, case, one who made it 25 yards into the country before being detained— "cannot be said to have 'effected an entry,' and is in the same position as an alien seeking admission at a port of entry." (Quoting *Zadvydas*, 533 U.S. at 693). Here, though, there is nothing in the record indicating how long petitioner had been inside the United States, nor anything suggesting that he had not "effected an entry" into the country before surrendering to Border Patrol. Respondents support their assertion only with citations to regulatory language that, on its face, does not describe Petitioner, with no argument, fact, or authority explaining how he could be classified as "arriving."[8]

To be clear, that Petitioner was "present in the United States" and not "an arriving alien" are determinations made by Respondents' own agent on the day of his re-detention. Dkt. No. 6-1 (Notice to Appear) at 2 (leaving unchecked the box "You are an arriving alien" and, instead, checking the box "You are an alien present in the United States who has not been admitted or paroled."). These determinations are also consistent with records and decisions made by Respondents' agents at every turn since he was first apprehended in Texas in 2023. *See* Dkt. No. 6-2 at 3–4 (January 2023 Form I-213 describing Petitioner as having "unlawfully entered the United States . . . without being inspected by an immigration officer at a designated Port of Entry")[9]; Dkt. No. 6-4 at 2 (August 2023 order releasing Petitioner "in accordance with section

---

[8] In addition to 8 C.F.R. § 1.2, Respondents also cite § 235.3(c), which pertains to the detention of "arriving" noncitizens. But because Petitioner does not fall within the definition of "arriving," this detention provision does not apply to him, nor does the provision within § 1.2 that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked."

[9] That Petitioner's I-213 describes him as subject to expedited removal under 235(b)(1), Dkt. No. 6-2 at 3, does not mean he was "arriving." Section 235(b)(1) of the INA, codified at 8 U.S.C. § 1225(b)(1), applies not only to

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 16

236"). To the extent Respondents expect this Court to overrule their own prior determinations, they have not asked the Court to do so nor provided any factual or legal basis on which it should. The officers' repeated determinations speak for themselves, and the Court has been given nothing else to go on but the unsupported assertions of counsel.

Other than their assertion that Petitioner is an "arriving alien," Respondents offer no argument that he would be subject to detention under 8 U.S.C. § 1225(b), and the Court will not consider other possible grounds that Respondents did not assert. *See generally* Dkt. No. 4. It is important to note, however, that the record before the Court clearly shows that Respondents have considered Petitioner to be detainable only under § 1226, not § 1225, since at least August 2023, when DHS issued an "Order of Release on Recognizance" informing Petitioner that he was being subjected to terms of conditional release "[i]n accordance with section 236 of the Immigration and Nationality Act"—that is, 8 U.S.C. § 1226. Dkt. No. 6-4 at 2. This is a critical distinction, because, as Respondents repeatedly acknowledge, the conditional release they previously granted to Petitioner is not available to noncitizens in removal proceedings under § 1225. *See, e.g.*, Dkt. No. 4 at 5 ("The sole means of release from detention pursuant to Section 1225(b) is temporary parole [under Section 1182(d)(5)(A).]") In other words, if Petitioner was truly subject to mandatory detention under § 1225, Respondents could never have released him under § 1226—a contradiction Respondents completely ignore.

The Court presumes Respondents' determination that Petitioner was eligible for conditional release under 8 U.S.C. § 1226 was correct, as it appears Petitioner was never an "arriving alien," Respondents offer no other reason he would be subject to detention under

---

"arriving" noncitizens, but also to "certain other" noncitizens designated by the Secretary of Homeland Security who have been present in the United States for less than two years without being admitted or paroled. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii).

§ 1225, and Respondents do not indicate that they erred in releasing Petitioner under 8 U.S.C. § 1226.

*    *    *

For the foregoing reasons, the Court finds that Petitioner is in custody in violation of the Constitution of the United States. Petitioner must be released and not re-detained without a hearing before an immigration judge.

**D.      Miscellaneous Matter**

That resolves the petition. Unfortunately, however, the Court feels compelled to write further to address the unacceptable number of authorities cited by Respondents that were misrepresented, inapplicable, or both. Specifically, Respondents' treatment of *Zinermon v. Burch*, 494 U.S. 113, *Martinez Hernandez v. Andrews*, 2025 WL 2495767, and *Calderon v. Noem*, 2025 WL 3754042, falls short of the basic level of accuracy that the Court expects from litigants who come before it. The Court will give Respondents the benefit of the doubt this time and assume that each of these was an oversight or misunderstanding rather that a deliberate attempt to mislead the Court. But where a person's liberty is at stake—and where, as here, that liberty was unconstitutionally deprived—there is no room for such oversights or misunderstandings. The Court expects better, especially from the United States Attorney's Office, which "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, . . . is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). Future such misrepresentations may expose Respondents and their counsel to sanctions.

//

//

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 18

## IV.    CONCLUSION

Accordingly, the Court ORDERS as follows:

(1)    The Petition for a Writ of Habeas Corpus (Dkt. No. 1) is GRANTED.

(2)    Respondents SHALL release Petitioner from detention immediately pursuant to the conditions in his preexisting Order of Release on Recognizance;

(3)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner until after an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioner is issued a final order of removal.

(4)    Within 24 hours of this Order, Respondents SHALL provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(5)    Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 3rd day of February, 2026.

_____
Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 19